**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| DITTMER PROPERTIES, L.P., <br>     Plaintiff. <br> <br> v. <br> <br> FDIC, CATHY RICHARDS, <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) NO. 2:11-CV-4011-FJG <br> ) <br> ) <br> ) <br> ) |

## ORDER

Currently pending before the Court is Defendant FDIC's Motion to Dismiss (Doc. No. 7), and Plaintiff's Motion to Realign Defendant Richards as a Party-Plaintiff (Doc. No. 11).

### I. BACKGROUND

In July 2006, the Barkley Center General Partnership ("BCGP") comprised of two equal partners, John Peters and Joe Dittmer, took out a loan in the amount of $2,550,000. Property owned by the partnership was used as collateral for the loan. The partnership defaulted on the loan and the property was placed under the control of the FDIC as receiver for the now insolvent bank. The plaintiff successor in interest, Dittmer Properties L.P., representing half of BCGP's interest, sued the original lending bank, Premier Bank, seeking declaratory judgment that the loan should be declared void as to plaintiff Dittmer Properties L.P. and sought to enjoin the bank from selling the encumbered property. The primary basis for plaintiff Dittmer Properties L.P.'s complaint is that the partner who signed for the loan, John Peters, did not have authority from the

1

other partner, Joe Dittmer, to do so. Plaintiff Dittmer Properties L.P. is suing both the assignee of John Peters' interest, Cathy Richards, and the bank who made the loan, Premier Bank, alleging "violations of common law duties" including "making a loan that is not commercially reasonable, nor in keeping with its obligation to exercise ordinary care in respect to plaintiff." Additionally by disbursing the funds to pay off another loan that the signer/partner John Peters had, the defendant Premier Bank is alleged to have converted the funds loaned to the partnership (since the loan that Peters paid off was also held by Premier Bank). See First Amended Petition, P. 21-22 (Doc. No. 1-2 at pages 12-18). The FDIC was substituted as a defendant in Premier Bank's place shortly after being appointed receiver. Thereafter, FDIC removed the case to federal court and filed its Motion to Dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. STANDARD

Upon a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party. Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). In cases of statutory interpretation, as opposed to disputed factual issues that may affect subject matter jurisdiction under 12(b)(1), the "language of the statute controls when sufficiently clear in its context." Knight v. Washington School Dist., 2011 WL 1564016 * 1 (8th Cir. April 27, 2011) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 200-01 (1976)).

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 129 U.S. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of factual enhancement will not suffice.  Id. (quoting Twombly).  Determining whether a claim is plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  Hamilton v. Palm, 621 F. 3d 816 (8th Cir. 2010) (quoting Iqbal at 1950).  Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor.  Phipps v. FDIC, 417 F3d 1006, 1010 (8th Cir. 2005).

### III. DEFENDANT FDIC'S MOTION TO DISMISS

FDIC filed its motion to dismiss on three separate bases: 1) that 12 U.S.C. §1821, the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") bars plaintiff's claims because it directs claims to first be exhausted through the receiver's claims handling process before such claims may be brought before a judicial court, allegedly depriving the district court of subject matter jurisdiction; 2) for lack of subject matter jurisdiction generally based on 12 U.S.C. § 1821(j) which states that no court may take any action to restrain or affect the exercise of powers or functions by the Corporation as a receiver; and 3) for failure to state a claim upon which relief can be granted under 12(b)(6).  The Court will deal with the issue of subject matter jurisdiction first.

The Eighth Circuit has previously addressed the issue of subject matter jurisdiction in two notable cases involving FIRREA.  In Bueford v. Resolution Trust Corp., 991 F.2d 481, 484. (8th Cir. 1993), it held that FIRREA creates a jurisdictional

3

bar to the district court because "the language of FIRREA clearly indicates that unless the administrative procedures are complied with, no court shall have jurisdiction to evaluate a claim brought against a failed banking institution for whom the RTC has been appointed receiver." Id. at 484. Bueford involved an employee's discrimination claim against the bank in an action filed before the receiver was appointed. The plaintiff did not think the claim filing process requirement of FIRREA applied to her because she had already filed a lawsuit before the receiver was appointed. The court held otherwise, stating that she needed to comply with the claims process, and since she did not, her claim was barred from being heard by the district court. However, Bueford is distinguishable from the instant case because here, the plaintiff timely filed a claim with the FDIC as required by FIRREA.

The other notable Eighth Circuit case, Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707 (8th Cir. 1996) also denied subject matter jurisdiction to the district court based on what it saw as an "exhaustion" requirement built into the statute. Tri-State involved a debtor group of hotels that entered into purchase agreements with a bank to finance distressed properties. Plaintiffs sought injunctive relief through the rescission of the agreements. The Eighth Circuit affirmed the lower court's grant of dismissal based on a lack of subject matter jurisdiction because the "debtor was required to exhaust all administrative remedies before seeking judicial relief against receiver." Id. at 707. But as was the case in Bueford, the Tri-State plaintiff did not timely file a claim with the receiver. "The court noted that under FIRREA, a claimant must exhaust the administrative review process before a court has jurisdiction to hear the claims...[b]ecause Tri-State did not present its claims to the FDIC for administrative

4

review during the ninety-day period...dismissal was appropriate." Id. at 711.

To date, the Eighth Circuit has not directly addressed whether the FIRREA jurisdictional bar would apply in a case filed before the receiver was appointed, and by a plaintiff who was concurrently following the claims procedure, as we have here. Neither Bueford nor Tri-State involved plaintiffs who had timely claims pending with the receiver. In the case of a plaintiff who has a claim pending with the receiver and is maintaining a lawsuit that was filed before the receiver was appointed, the Court looks to and is persuaded by FDIC v. Chorice, 857 F. Supp. 672 (W.D. Mo. 1994).

In Chorice, the plaintiffs were third-party personal guarantors of a loan who filed suit against a bank alleging that it failed to immediately notify guarantors if the principal failed to make loan payments. As in the instant case, the FDIC in Chorice argued that this court must dismiss all cases asserting a claim against a failed banking institution which were pending before the FDIC took over because the claimants had not exhausted the administrative review process, basing its argument on FIRREA, 12 U.S.C. § 1821(d)(13)(D) entitled "Limitation on Judicial Review" which states:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over–
>
> (I) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

5

But as the Chorice court explained, "subsection (d) gives this court jurisdiction if a claimant timely files a claim with the FDIC and timely files in this court the earlier of the expiration of the 180-day period or after receiving notice the FDIC disallowed the claim," referring to 12 U.S.C. § 1821(d)(3-6). Chorice, 857 F. Supp. at 674. Thus, the court held that where a lawsuit was pending and a claim timely filed with the receiver, the court did not lose jurisdiction pending the exhaustion of the claim through the claims process. It further noted that subject matter jurisdiction is evaluated at the time the lawsuit is filed, and expressed some concern over removing it from the court in the absence of clear legislative direction to the contrary. Chorice, 857 F. Supp. at 676 (emphasis added).

This decision is in line with other circuits that have reviewed cases involving claims proceeding in the administrative review process and concurrently pending lawsuits. In Marquis v. FDIC, 965 F. 2d 1148 (1st Cir. 1992), the court viewed the statutory framework as constructing a "scheme" whereby courts retain jurisdiction over pending lawsuits by suspending, rather than dismissing the suits, "subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." Id. at 1154. Moreover, numerous sections within FIRREA refer to pending cases and provide that "filing a claim with the FDIC shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." Chorice, 857 F. Supp. at 674-75, referring to 12 U.S.C. § 1821(d)(5)(F)(ii). Another section, 12 U.S.C. § 1821(d)(12)(A), refers to the ability of the receiver "to request a stay ... in any judicial action or proceeding to which such institution is or becomes a party."

The Court agrees with the reasoning of Chorice and Marquis. Therefore, the Court having considered all of the arguments and law on the issue of subject matter jurisdiction in a case controlled by FIRREA, the Court hereby **DENIES IN PART Defendant FDIC's Motion to Dismiss**, holding that it retains subject matter jurisdiction, and **STAYS** the case pending exhaustion of the claims handling process as required by FIRREA. Having stayed the matter, the Court declines to address at this time the other reasons for dismissal advanced by the FDIC.

### IV. PLAINTIFF'S MOTION TO REALIGN THE DEFENDANT CATHY RICHARDS AS A PLAINTIFF

Plaintiff filed a motion to realign the parties so that defendant Richards would become a plaintiff. Missouri partnership law appears to require all general partners to sue in their individual capacities in order for the general partnership to have capacity to sue. "It is clear that one partner may not sue alone on an obligation due the partnership." Dakin v. Greer, 685 S.W.2d 276, 278 (Mo. App. 1985).

While a realignment would join both halves of the general partnership as plaintiffs, the problem is that the law requires the parties to be "aligned according to their true interest." Motion Control Corp. v. SICK, Inc., 354 F.3d 702, 705 (8th Cir. 2003) (citing Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 248 (1952)). Moreover, it is the duty of federal courts to look beyond pleadings and to arrange the parties according to their sides in the dispute, and the court must inquire into the principal purpose of the suit and primary and controlling matter in dispute. Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 870 (8th Cir. 1966).

It is clear that the interest of the other partner, John Peters, currently named as the defendant Cathy Richards, is adverse to the plaintiff, Dittmer Properties L.P., in that it was Peters' alleged action of diverting the partnership loan funds to pay off his other business loan that is the real issue.  Plaintiff alleges in ¶ 14 of its Amended Petition that the other partner, Peters, "purportedly acting on behalf of the Barkley Center General Partnership, executed a note and deed of trust...in the amount of $2,550,000."  It is this note that the Plaintiff wishes to have declared void as against it because Plaintiff asserts that Peters did not have authority to execute this note on behalf of the partnership. "John L. Peters was not authorized to disburse the property, funds or assets of Barkley Center General Partnership to other entities which John L. Peters owned, as set forth in paragraph 19 above."  See ¶ 19, Plaintiff's First Amended Petition, Doc. No. 1-2, p. 15. This is clearly an allegation against Peters and thus against defendant Richards.

As noted in Universal Underwriters, Inc., 367 F.2d at 870, the court may look beyond the pleadings to determine the true interests of each party.  Here, exhibits on file provide context to the claims at hand.  Attached to Defendant's Amended Answer and Counterclaim, are documents that show the bank actually obtained the Plaintiff's predecessor in interest, Joe Dittmer's, written permission for the loan being made to his partner/signer John Peters, and that Dittmer agreed to the attachment of the property at issue.  See Exhibit E, page 80 to Document No. 1-2.  Additionally, the bank alleges that it was presented with an Amended Partnership agreement giving the signer/partner Peters the title of Managing General Partner of BCGP which gave Peters permission to "engage in, do and transact all and every kind of business in which BCGP is or may hereafter be interested in such manner as the Managing General Partner may think

proper." Exhibit C, page 77 of Document No. 1-2.  These two exhibits indicate that the bank was allegedly presented with evidence that Peters had authority to sign for the loan, thus redirecting the focus to the agreement between the two partners.

The primary issue here is that the signer/partner Peters signed for the general partnership's loan, encumbering partnership property as collateral, but then used it to pay off a non-partnership loan.  These facts are alleged, supported and undisputed in the pleadings.  Based on these facts alone, the Court determines that the parties have adverse interests and **DENIES Plaintiff's Motion to Realign Defendant Richards as a Party-Plaintiff**.

## V. CONCLUSION

Therefore, the Court having thoroughly reviewed the cases and law hereby **DENIES Defendant FDIC's Motion to Dismiss** (Doc. No. 7) based on a lack of subject matter jurisdiction.  Further, the Court **STAYS** the proceedings pending the exhaustion of Plaintiff's claims through the administrative claims process and **DENIES** the Plaintiff's Motion to Realign Defendant Richards as a Party-Plaintiff (Doc. No. 11).


Date:  06/29/11                                **S/FERNANDO J. GAITAN, JR.**
Kansas City, MO                       Fernando J. Gaitan, Jr.
                                               Chief United States District Judge