IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| DITTMER PROPERTIES, L.P., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) NO. 2:11-CV-4011-FJG |
| FDIC, CATHY RICHARDS, | ) |
| Defendants. | ) |

**ORDER**

Currently pending before the Court is plaintiff's Motion to Renew or Reactivate Case and to Lift Stay (Doc. # 24); Federal Deposit Insurance Corporation ("FDIC's") Motion for Reconsideration of Motion to Dismiss (Doc. # 25); Plaintiff's Motion for Leave to Add Plaintiffs and to File a Second Amended Complaint (Doc. # 26); Defendant Richards' Motion for Judgment on the Pleadings (Doc. # 27); Plaintiff's Amended Motion to Add Plaintiffs and to File a Second Amended Complaint (Doc. # 38); Joint Motion to Consolidate Cases (Doc. # 53); Motion to Withdraw Motion to Consolidate (Doc. # 57); Plaintiff's Motion to Consolidate Cases (Doc. # 58), FDIC's Motion to Substitute Defendant (Doc. # 59) and FDIC's Motion for Trial to the Court (Doc. # 106).

**I. BACKGROUND**

In July 2006, the Barkley Center General Partnership ("BCGP") comprised of two equal partners, John Peters and Joe Dittmer, took out a loan in the amount of $2,550,000 from Premier Bank. Property owned by the partnership was used as collateral for the loan. The partnership defaulted on the loan and the property was placed under the control of the FDIC as receiver for the now insolvent bank. The plaintiff successor in interest, Dittmer Properties L.P., representing half of BCGP's

interest, sued the original lending bank, Premier Bank, seeking declaratory judgment that the loan should be declared void as to plaintiff Dittmer Properties L.P. and sought to enjoin the bank from selling the encumbered property. The primary basis for plaintiff Dittmer Properties L.P.'s complaint is that the partner who signed for the loan, John Peters, did not have authority from the other partner, Joe Dittmer, to do so. Plaintiff Dittmer Properties L.P. is suing both the assignee of John Peters' interest, Cathy Richards, and the bank who made the loan, Premier Bank, alleging "violations of common law duties" including "making a loan that is not commercially reasonable, nor in keeping with its obligation to exercise ordinary care in respect to plaintiff." Additionally by disbursing the funds to pay off another loan that the signer/partner John Peters had, the defendant Premier Bank is alleged to have converted the funds loaned to the partnership (since the loan that Peters paid off was also held by Premier Bank). See First Amended Petition, ¶ 21-22 (Doc. No. 1-2 at pages 12-18). The FDIC was substituted as a defendant in Premier Bank's place shortly after being appointed receiver. Thereafter, the FDIC removed the case to federal court and filed its Motion to Dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). On June 28, 2011, the Court denied in part the FDIC's Motion to Dismiss and held that it retained subject matter jurisdiction and stayed the case pending exhaustion of the claims handling process.

## II. STANDARD

Upon a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept all factual allegations in the pleadings as true and view them in the light most favorable to the nonmoving party. Kohl v. Casson, 5

F.3d 1141, 1148 (8th Cir. 1993). In cases of statutory interpretation, as opposed to disputed factual issues that may affect subject matter jurisdiction under 12(b)(1), the "language of the statute controls when it is sufficiently clear in context." Knight v. Washington School Dist., 416 Fed.Appx. 594, 595 (8th Cir. April 27, 2011) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 200-01, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)).

To survive a motion to dismiss under 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A pleading that merely pleads "labels and conclusions" or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of "further factual enhancement" will not suffice. Id. (quoting Twombly). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Under Fed. R. Civ. P. 12(b)(6) we must accept the plaintiff's factual allegations as true and grant all reasonable inferences in the plaintiff's favor. Phipps v. FDIC, 417 F.3d 1006, 1010 (8th Cir. 2005).

### III. DISCUSSION

**A. Motion to Lift Stay**

On July 7, 2011, plaintiff filed a Motion to Renew or Reactivate Case and for an Order Lifting the Stay. Plaintiff states that the FDIC completed its administrative

3

review of the claim and denied it on June 15, 2011.  Accordingly, for good cause shown and with no opposition indicated, the Motion to Renew or Reactivate Case is hereby **GRANTED** (Doc. # 24) and the stay of this case is lifted.

### B. Motion for Reconsideration of Motion to Dismiss

Initially, the FDIC filed its motion to dismiss on three separate bases: 1) that the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. §1821, bars plaintiff's claims because it directs claims to first be exhausted through the receiver's claims handling process before such claims may be brought before a judicial court, allegedly depriving the district court of subject matter jurisdiction; 2) lack of subject matter jurisdiction generally based on 12 U.S.C. § 1821(j) which states that no court may take any action to restrain or affect the exercise of powers or functions by the Corporation as a receiver; and 3) failure to state a claim upon which relief can be granted under 12(b)(6).  As noted above, the Court earlier dealt with the issue of subject matter jurisdiction.  Now that plaintiff has exhausted its claims through the claims handling process, the FDIC asks that the Court consider the other two reasons for dismissal which the Court did not address in its earlier order.

### 1. Anti-Injunction Provision of FIRREA

12 U.S.C. § 1821(j) Limitation on court action states:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver.

The FDIC argues that courts have found this provision to "effect a sweeping

ouster of courts' power to grant equitable remedies. . . ." Freeman v. Federal Deposit Ins. Corp., 56 F.3d 1394,1399 (D.C.Cir.1995). In the instant case in Count I, plaintiff is asking the Court for a declaratory judgment "adjudging that the $2,550,000.00 Note executed by Barkley Center General Partnership on or about September 15, 2006 is void as to Plaintiff, that the Deed of Trust recorded at Book 3023, Page 152 of the Records of Boone County, Missouri purporting to secure said Note is void, for judgment reimbursing Plaintiff for its share of any payments upon said note with prejudgment interest thereon, for its costs herein, including but not limited to, its share of attorney's fees, and for such other and further relief as the Court deems just and proper." In Count II, plaintiff likewise seeks a declaratory judgment that the note and the Deed of Trust are void and finally in Count III, plaintiff seeks an injunction restraining Premier Bank and the FDIC from ordering and permitting the sale of the property encumbered by the Deed of Trust at a foreclosure sale. Plaintiff has filed a motion seeking leave to file a Second Amended Complaint. However, the Second Amended Complaint, seeks the same declaratory judgment relief in Counts I and II against the FDIC - requesting a judgment that the note and deed of trust are void and in Count III requesting an injunction restraining the FDIC from selling the property.

In Radian Insur. v. Deutsche Bank National Trust Co., No. 08-2993, 2009 WL 3163557, * 5 (E.D.Pa. Oct. 1, 2009), the Court noted, "numerous courts have found that the § 1821(j) bar applies to various different types of requests for equitable relief, including requests for an injunction, rescission and declaratory relief." In Sunflower Bank v. Federal Deposit Insurance Corporation, No. 09-4006-SAC, 2010 WL 3913597, (D.Kan. Sept. 30, 2010), the Court observed, "[t]he purpose of the statute is

5

to permit the FDIC to 'function without judicial interference that would restrain or affect the exercise of its power.'" Id. at *6, (quoting Rosa v. Resolution Trust Corp., 938 F.2d 383, 397 (3d Cir.), cert. denied, 502 U.S. 981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991)). In Freeman, the Court stated that "[n]ot only does it bar injunctive relief, but in the circumstances of the present case where appellants seek a declaratory judgment that would effectively 'restrain' the FDIC from foreclosing on their property, § 1821(j) deprives the court of power to grant that remedy as well." Id. 56 F.3d at 1399.

Plaintiff argues in opposition that "a declaration whether something is an asset which the FDIC allegedly has control over as receiver does not restrain or affect its powers, functions or operations. A declaratory judgment simply declares the rights of the parties without ordering anything to be done." (Plaintiff's Suggestions in Opposition, p. 3). Plaintiff also argues that courts have jurisdiction over claims that have been presented to the FDIC under its administrative review process. Because plaintiff's claims were submitted through the administrative review process, plaintiff argues that the Court has jurisdiction over them. However, this argument has been rejected. In Radian Insur., the Court stated:

> The Court also finds it noteworthy that apparently no parties have asserted this argument before and no courts have construed § 1821(d)(6)(A) as an exception to § 1821(j). Despite its burden, Radian has not provided a single case holding that a plaintiff asserting a claim for equitable relief, whether filed pre-receivership or post-receivership, can overcome the anti-injunction provision in § 1821(j) by complying with the exhaustion procedure in § 1821 (d)(6)(A). Where the intended purpose of those two provisions is clearly different and the provisions are not linked on the face of the statute, this Court will not strain the language and structure of the statute to discern a hidden meaning suggested by one of the parties. This is particularly true in light of

6

> Congress's clear intent to impose a drastic limitation on this Court's power to provide equitable relief under § 1821(j). Thus, without more, this Court cannot find that § 1821 (d)(6)(A) was intended to act as an exception to the broadly worded § 1821(j) for suits initiated pre-receivership.

Id at * 10.

Plaintiff also argues that the declaratory judgment action cannot be barred by FIRREA, because it would result in an unconstitutional taking, leaving plaintiff with no remedy. However, this argument has also been rejected. In Beal Bank Nevada v. Business Bank of St. Louis, No. 4:11CV561 DDN, 2011 WL 3444241 (E.D.Mo. Aug. 8, 2011), the defendant sought a rescission of an assignment and an order that it be allowed to repurchase a Participation Agreement. The Court noted that

> [w]hile [defendant] argues that such claims are valid because it has no adequate remedy at law, this argument cannot overcome the explicit statutory prohibition against such restrictive relief. "To hold that the lack of an adequate alternative remedy renders § 1821(j)'s bar against restraining orders inoperative would . . . be tantamount to rendering the provision entirely ineffective."

Id. at *6 (quoting Ward v. Resolution Trust Corporation, 996 F.2d 99, 104 (5th Cir. 1993)). See also Vegas Diamond Properties LLC v. La Jolla Bank, No. 10CV1205-WQH-BGS, 2010 WL 4606461, *5 (S.D.Cal. Oct. 29, 2010).

In Radian Insur., the Court noted that the "[c]ollection of money owed to the depository institution is a clear exercise of the RTC's power to preserve assets and return the institution to a solvent state." Id. at *13. Similarly, in Telematics International Inc. v. NEMLC Leasing Corp., 967 F.2d 703 (1st Cir.1992), the Court stated,

> [i]f such an injunction were permissible, creditors would be able to secure judicial review, in advance, of every action that the FDIC

7

proposed to take, regardless of whether that action was clearly within the FDIC's statutory authority. Such judicial interference would dramatically limit the FDIC's ability to exercise its statutory powers efficiently and effectively.

Id. at 706. In Radian, the Court stated that this same reasoning "applies to the request for declaratory relief, as a declaration of rights would allow the plaintiff to secure review in advance, thereby preempting any action by the FDIC to collect money possibly owed to the depository institution." Id. 2009 WL 3163557 at *13. Thus, the Court finds that plaintiff's requests for declaratory and injunctive relief are barred by 12 U.S.C. § 1821(j).

### 2. Plaintiff's Remaining Claim Against FDIC

In both the First and Second Amended Complaints, plaintiff requests a judgment reimbursing plaintiffs for its share of any payments upon said note with prejudgment interest therein, for its costs and its attorney fees. As this is a request for money damages, it would not be barred by the anti-inunction provision. However, the FDIC argues that plaintiff Dittmer Properties. L.P. lacks standing to assert this claim. In Ronwin v. Ameren Corp., No. 4:07CV1536, 2007 WL 4287872, (E.D.Mo. Dec. 6, 2007), the Court stated:

> Under the federal rules, the capacity of a partnership to sue in this Court is determined by the laws of the state of Missouri, except that a partnership may sue under its common name to enforce federal rights. . . .Under Missouri law, " a partner may not sue in his own name on a cause of action accruing to the partnership". . . . In a partnership, all of the partners have a joint right against a defendant; therefore, all of the partners are necessary parties-plaintiffs in an action to enforce the rights due to the partnership. . . . Without the joinder of the other partners, [plaintiff] does not have standing to sue under Missouri law.

Id. at *1. In that case, the Court found that although the plaintiff had an interest in a

8

partnership named ARKIANA, that interest alone did not entitle him to bring the suit in his own name. See also, Sarasohn & Co. v. Prestige Hotels Corp., 945 S.W.2d 13,16 (Mo.App. 1997)("All partners are necessary parties-plaintiff in an action to enforce obligations due the partnership. . . .One partner may not sue alone on an obligation due the partnership."). In Ronwin, the Court noted:

> Standing is "a jurisdictional prerequisite that must be resolved before reaching the merits of a suit." City of Clarkson Valley v. Mineta, 495 F.3d 567, 569 (8th Cir. 2007). To establish standing, [plaintiff] must demonstrate that (1) he has suffered an injury or invasion of a legally protected interest, (2) there is a causal connection between the injury and the conduct complained of, and (3) it is likely that the injury will be redressed by a decision in his favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

Id. at *1. In the instant case, even if Dittmer Properties L.P. had joined Cathy Richards as a plaintiff, the Court finds that the partnership would lack standing to bring this claim for reimbursement of payments made on the note because the partnership cannot demonstrate that it suffered any injury. In the First Amended Complaint, plaintiff alleges, "[o]n September 15, 2006, John L. Peters, purportedly acting on behalf of the Barkley Center General Partnership, executed a note and deed of trust recorded in Book 3023 at Page 152 of the records of Boone County, Missouri in favor of Defendant Premier Bank for a loan ostensibly made to it in the amount of $2,550,000.00." (First Amended Petition, ¶ 14.) Plaintiff alleges in the First Amended Complaint that "John Peters did not use the Power of Attorney in executing the subject note and deed of trust and did not execute the note and deed of trust in his capacity as attorney in fact for Joe Dittmer under said power of attorney." (First Amended Petition, ¶ 15). However, the pleadings filed in the state court action,

which were attached to the Notice of Removal, show that John Peters had the authority to execute the note and deed of trust.  On January 17, 1996, Joe Dittmer and Barbara Dittmer executed a Durable Power of Attorney appointing John Peters as "our true and lawful attorney for us and in our name, solely for the benefit of our interest as a General Partner in Barkley Center General Partnership to . . .

> (c) Grant, bargain, sell, exchange, lease, mortgage or otherwise convey any part or all of the real or personal property now owned or hereafter acquired by BARKLEY CENTER GENERAL PARTNERSHIP or to which BARKLEY CENTER GENERAL PARTNERSHIP now has or may in the future acquire any interest whether legal or equitable, and in our name as general partner, of BARKLEY CENTER GENERAL PARTNERSHIP to make, execute, acknowledge and deliver good and sufficient deeds, leases, deeds of trust, bills of sale, mortgages, promissory notes, term loan agreements, security agreements, commercial and/or business loan affidavits, grant of security interests, statements of encumbrances and priorities, or other conveyances of the same

(Doc. 1-2, pp. 78-79).

In an Amendment to the Barkley Center General Partnership Agreement, dated October 17, 2001, Joe Dittmer and John Peters stated that "due to the death of Barbara Dittmer, Joe E. Dittmer is desirous of limiting his involvement as a General Partner in Barkley Center General Partnership, and Whereas, the remaining General Partners in Barkley Center General Partnership are desirous of naming John Peters the Managing General Partner of Barkley Center General Partnership."  The Agreement stated that from that date forward, John Peters would act as the Managing General Partner of Barkley Center General Partnership and have the authority to:

> (C) Grant, bargain, sell, exchange, lease, mortgage or otherwise convey any part or all of the real or personal property now owned or hereafter acquired by Barkley Center General Partnership or to which

> Barkley Center General Partnership now has or may in the future
> acquire any interest, whether legal or equitable, and as Managing
> General Partner shall have the right and power to make, execute,
> acknowledge and deliver good and sufficient deeds, leases, deeds of
> trust, bills of sale, mortgages, promissory notes, term loan agreements,
> security agreements, commercial and/or business loan affidavits, grants
> of security interests, statements of encumbrances and priorities, or
> other conveyances of the same.
> . . .
> (E) Engage in, do and transact all and every kind of business in which
> Barkley Center General Partnership is or may hereafter be interested in
> such manner as the Managing General Partner may think proper.

(Doc. 1-2, pp. 76-77). Furthermore, on September 14, 2006, the day before John Peters executed the note and deed of trust, Joe Dittmer faxed a letter to Steve Smith at Premier Bank, stating: "I have no problem with John Peters using Power of Attorney to encumber on Comm. property of Barkley Partnership." (Doc. 1-2, p. 80). Thus, because John Peters had the authority under the Power of Attorney and also under the Amendment to the Partnership Agreement to take out the loan and to execute the Note and the Deed of Trust, there is no injury resulting to the partnership. Because there was no injury to the partnership, the Court finds that plaintiff has no standing. Accordingly, the Court hereby **GRANTS** the FDIC's Motion to Reconsider Motion to Dismiss (Doc. # 25) and hereby **DISMISSES** all of plaintiff's claims against the FDIC.

## 3. Claims Against Cathy Richards

In the First Amended Complaint, plaintiff makes no claims against Cathy Richards. In the proposed Second Amended Complaint, in Counts I and II, plaintiff requests judgment against Cathy Richards for $2,550,000.00 in the event that the

11

Note and Deed of Trust are not cancelled. The Court finds that whatever claims plaintiff has against Cathy Richards, those claims arise under state law. Since the Court has now dismissed all of the claims against the FDIC, the Court declines to exercise supplemental jurisdiction over plaintiff's state law claims against Ms. Richards. See 28 U.S.C. § 1367(c)(3). "Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed." Gibson v. Weber, 431 F.3d 339, 342 (8th Cir.2005). Accordingly, the Court hereby remands to the Boone County Circuit Court, plaintiff's remaining state law claims against Cathy Richards.

**C. Remaining Motions**

In light of the Court's rulings, the Court hereby **DENIES** Plaintiff's Motion for Leave to Add Plaintiffs and to File a Second Amended Complaint (Doc. # 26); **DENIES AS MOOT** Defendant Richards' Motion for Judgment on the Pleadings (Doc. # 27); **DENIES** Plaintiff's Amended Motion to Add Plaintiffs and to File a Second Amended Complaint (Doc. # 38); **DENIES** the Joint Motion to Consolidate Cases (Doc. # 53); **DENIES AS MOOT** the Motion to Withdraw the Motion to Consolidate (Doc. # 57); **DENIES** Plaintiff's Motion to Consolidate Cases (Doc. # 58); **DENIES AS MOOT** the FDIC's Motion to Substitute Defendant (Doc. # 59) and **DENIES AS MOOT** the FDIC's Motion for Trial to the Court (Doc.# 106).

Date: <u>January 27, 2012</u>  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri  Fernando J. Gaitan, Jr.
 Chief United States District Judge